IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CATHERINE SHANNON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 03-CV-3660 |
| v. | ) | |
| | ) | HONORABLE DAVID H. COAR |
| THE ROBERT ALLEN GROUP, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court is a motion for summary judgment filed by Defendant The Robert Allen Group ("RAG" or Defendant") against Plaintiff Catherine Shannon ("Shannon" or "Plaintiff"). For the reasons set forth below, Defendant's motion is GRANTED.

### Background[1]

Defendant, an Illinois corporation in the business of furniture sales, is an employer for purposes of 42 U.S.C. § 2000e(b) and 29 U.S.C. § 630(b) et seq. Plaintiff, an Illinois resident who was born on September 13, 1960, was employed by Defendant as a salesperson from 1990 through 1996.

Plaintiff was rehired by Defendant in 1999. In August 2002, Patty Perry ("Perry") became Plaintiff's direct supervisor and remained her supervisor for the duration of her employment at RAG. Perry is three weeks younger than Shannon.

---

[1] All facts are taken from the parties' L.R. 56.1 submissions.

-1-

During Plaintiff's employment, Defendant maintained a progressive discipline policy for its employees.

*Plaintiff's Furniture Possession*

Some employees of RAG would take furniture from the showroom to their homes without paying for it. Although this was not in line with company policy (for example, in 1999, Plaintiff received information stating that furniture had to be purchased at showroom cost plus tax and freight), these employees were undeterred. In August 2002, the company issued a revised written policy that stated that all employee purchases were to be paid for in advance of receipt of goods.

In late September or early October of 2002, Perry told all of the employees that there would be an amnesty for unpaid-for furniture. Any employee who had unpaid for furniture at his or her home would have the opportunity to return it within a certain period of time and suffer no repercussions.

One of Shannon's fellow sales employees, Eric Byers, took advantage of the amnesty and returned two lamps he had taken home.[2] He was not disciplined. Shannon did not return any merchandise during the amnesty period.

After the amnesty program had ended, during inventory, Perry discovered that Plaintiff had RAG furniture in her possession and had not fully paid for that furniture. Plaintiff possessed

---

[2] In Byers' deposition, he mentions that he had "a picture and a lamp" from the showroom in his possession. There is some confusion in the record regarding exactly what Byers possessed and returned. Plaintiff does not raise an issue with respect to Byers failing to return items during the amnesty, nor does she dispute Defendant's statement that Byers returned two lamps. The confusion is immaterial. In any event, neither side disputes that Byers returned the items in his possession.

a buffet, a china cabinet, a table, a chair, and an étagère. Plaintiff states she had been granted permission to possess this furniture without payment by Perry's predecessor, Julie Hokin.[3] Plaintiff notes that when Hokin told her she could take home the merchandise without paying for it in full, she knew that it was against company policy.

In October and November of 2002, after Perry asked Plaintiff about some missing furniture, Plaintiff returned or paid for the RAG furniture that she had in her possession. Plaintiff states she returned the goods because she no longer wished to purchase them.

On December 2, 2002, Plaintiff received a written Pre-Discharge Warning from Perry for having possessed the furniture without paying for it. The warning stated that "Any other situations that occur that violate company policy or procedure will result in further disciplinary action up to and including termination of employment." No other salesperson in the Chicago furniture showroom received a Pre-Discharge Warning from Perry for any reason.

On December 10, 2002, Shannon provided Perry a memorandum in response to the Pre-discharge Warning. The response stated that Shannon had permission from her previous supervisor to have the furniture in her home without having paid for it.[4]

*Plaintiff's Complaints to Human Resources*

Soon after she was disciplined, Plaintiff wrote a letter to RAG Human Resources official Susan Giebutowski. In the four-page letter, dated December 11, 2002, Plaintiff detailed her

---

[3] Plaintiff states that she also had the permission of an individual named Mike Hubert.

[4] Plaintiff also contends that not all the facts in the Pre-Discharge warning are true because she properly documented her possession of the console table. Plaintiff also alleges that she had written order numbers for the wooden chair and étagère she had taken for her personal use, which was further documentation. Regardless of documentation, Plaintiff did not return the furniture during the amnesty period.

problems with Perry's management skills. She wrote "since August, the feeling in the showroom is that Patty Perry wants us out...It became apparent early on that she is building a file on each of us." She added: "She sings the praises of the fabric showroom and constantly tries to make the furniture staff seem inadequate. I truly believe that she thinks that we don't try at all and that we don't care about results. This could not be further from the truth." She complained that on one occasion Perry did not tell her and Byers that she was leaving the showroom early. Another listed complaint is that Plaintiff's ten-year anniversary was not celebrated while other employees' anniversaries were celebrated. Plaintiff also writes that after completing a task, "Bill [Patterson] and Erik [Byers] received Starbucks cards" while "Chiara and I did not receive these same cards although they were promised to us all."

Aside from the written letter, Plaintiff left one or two voicemail messages in which she told Giebutowski that Perry did not respond to her request for vacation time. Plaintiff testified at deposition that she believed that Giebutowski did promptly respond to others who had complaints, such as Byers, Peterson, and Marcheschi.

Shannon knew that RAG had a policy against age and sex discrimination and complaint procedure resolving issues about discrimination. She knew that if she had a complaint concerning discrimination, she should notify Giebutowski. Plaintiff claims she eventually gave up on going to Giebutowski because her complaints always went unanswered. The letter is the sole written communication that Plaintiff states she wrote that dealt with discrimination. Both sides agree that Perry's treatment of Shannon did not worsen after the letter.

*Plaintiff's Other Complaints*

In February and March of 2003, Perry provided Plaintiff with inaccurate monthly sales analysis reports that represented only a fraction of Plaintiff's actual performance level. There is no indication that the Perry intentionally gave Plaintiff incorrect reports. Plaintiff complains that the harm that came of the misstatements was that Perry "didn't understand the amount of work" she was doing. At some point during her tenure, Plaintiff was offended when Perry's assistant, at Perry's direction, told Plaintiff to rehang furniture sales tags. Plaintiff did not re-hang the tags.

*Customer Complaint Against Plaintiff*

Shortly after February 28, 2003, Perry received a letter from a RAG customer that complained about Shannon's work performance. She gave a copy to Plaintiff in the middle of March 2003.

*Plaintiff's Signature Policy Violations*

In March 2003, RAG implemented a new policy that required that all order forms be signed by the customer. Plaintiff was aware of this policy when it went into effect. On or about March 12, 2003, Perry gave Shannon a new RAG Policy and Procedures manual, which stated that the number one requirement was to have customer signatures on all of the orders. The two of them met and discussed the changes that were contained in the manual, including the customer signature requirement. In early March of 2003, Perry required Shannon and other salespeople in the showroom to redo order forms from February 2003 that did not follow the policy.

On March 14, 2003, Shannon submitted three forms with client signatures cut from other documents and pasted onto the new order forms. Plaintiff knew that those submissions violated the new RAG policy. She notes that her actions defeated the goals of the signature policy: to

ensure that all order forms were accurate and to prevent customers from denying that they had placed orders.

On March 20, 2003, Shannon submitted another form without having the customer sign it. She photocopied the customer's signature from another document, and taped it onto the form.

On April 4, 2003, Perry terminated Shannon's employment because of the signature policy violation, her past history of discipline, and customer complaint.

*Other Employees' Signature Policy Violations*

Both Byers and William Peterson violated the policy on customer signatures in March 2003. Peterson, like Shannon, taped a customer's signature onto an order form. Byers submitted a form that stated "signature on file" where the customer's signature was supposed to be and also cut and pasted signatures to order forms.

Byers was born on June 10, 1966, making him about six years younger than Shannon. Peterson was born on July 16, 1965, making him about five years younger than Shannon.

Neither Patterson nor Byers had a prior disciplinary history. Both sides agree that Byers and Peterson were on better terms with Perry than Plaintiff was: they were "more willing to please" Perry than she was. Plaintiff alleges that Perry was much friendlier to Byers and Peterson in terms of greetings and salutations than she was with Plaintiff and Marcheschi.

The business day following Shannon's termination, Perry orally reprimanded Byers and Peterson for violating the signature policy. Two weeks after the oral reprimand, Peterson and Byers left their jobs. At the same time RAG drafted Shannon's termination letter, disciplinary letters to warn Byers and Peterson about their failure to have customers sign order forms were

also drafted. Perry did not give them their warning letters in the time between when Shannon was terminated and they quit.

*Subsequent Hires*

Chiara Marcheschi was a salesperson in the Chicago furniture showroom whose date of birth was November 23, 1976. She quit that position on February 6, 2003, at the age of 26. Ms. Perry hired Rita Quick as a sales employee to replace Marcheschi four days prior to Plaintiff's discharge. Quick is less than eight months younger than Shannon. Quick remains employed by RAG as a salesperson for its Chicago furniture showroom.

The next sales employee that Perry hired for its Chicago furniture showroom was B.J. Lane on April 11, 2003. She was sixty-nine years old at the time of her hire, twenty-seven years older than Plaintiff. Perry discharged her on April 21, 2003 for poor performance. Jason Wilder was then hired on May 5, 2003. He is less than eight years younger than Shannon and is still employed at RAG as a salesperson in its furniture showroom. The most recent sales employee hired by Perry was Deborah Zimmer, who was 52 years old at the time of her hire, making her 10 years older than Plaintiff. Zimmer is still employed by RAG as a salesperson in its Chicago furniture saleroom.

*Plaintiff's Subsequent Actions*

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on May 8, 2003. The EEOC issued the Plaintiff a Notice of Right to Sue, which allows Plaintiff to initiate a civil action in the appropriate forum. Plaintiff initiated this action within said ninety day period. Plaintiff now brings a claim under Title VII for gender discrimination and retaliation,

42 U.S.C. § 2000e and a claim under the ADEA for age discrimination, and retaliation, 29 U.S.C. § 621.

### Standard of Review

A party seeking summary judgment has the burden of showing, through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact that would prevent judgment as a matter of law. Fed.R.Civ.P. 56(c). On a motion for summary judgment, courts "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Allen v. Cedar Real Estate Group, LLP,* 236 F.3d 374, 380 (7th Cir. 2001). Even so, the non-moving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, she must go beyond the pleadings and support her contentions with proper documentary evidence. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).

To successfully oppose the motion for summary judgment, the non-movant must do more than raise a "metaphysical doubt" as to the material facts, *see Wolf v. Northwest Ind. Symphony Soc'y,* 250 F.3d 1136, 1141 (7th Cir.2001) (citation and quotation omitted), and instead must present definite, competent evidence to rebut the motion, *see Albiero v. City of Kankakee,* 246 F.3d 927, 932 (7th Cir. 2001); Fed.R.Civ.P. 56©. A mere scintilla of evidence in support of the non-movant's position is not sufficient to defeat a summary judgment motion. Rather, the non-movant must provide evidence that would enable a reasonable jury to find in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). In ruling on a motion for summary judgment, the Court must decide, based on admissible evidence, whether any material

dispute of fact exists that requires a trial. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir.1994).

Rule 56© mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. A non-moving party who bears the burden of proof on a specific issue must demonstrate by specific factual allegations that there is a genuine issue of material fact in dispute. *McMillian v. Svetanoff,* 878 F.2d 186, 188 (7th Cir.1989). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323.

<u>Analysis</u>

There are two ways for a plaintiff to prove a case of discrimination under Title VII and the ADEA– the direct method and the indirect method. The plaintiff proves a case under the direct method by putting forth enough evidence, whether direct or circumstantial, to raise a genuine issue concerning the employer's motivation in carrying out the challenged employment action. *See e.g., Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). Plaintiff does not argue that she has offered sufficient direct evidence that her termination was the result of discrimination on the basis of sex or age. Instead, she relies on the second method, the indirect, burden-shifting method first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

Under the burden-shifting method, the plaintiff bears the initial burden of producing evidence to sustain a prima facie case. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 742 (7th

Cir. 1999). Once the plaintiff establishes the prima facie case, the burden then shifts to the employer to produce evidence of a legitimate, non-discriminatory reason for the employment action. *Id*. If the employer offers a legitimate, non-discriminatory reason, the burden then shifts back to the plaintiff to present evidence that the employer's proffered reason is pretextual. *Id*. The ultimate burden of persuasion rests with the plaintiff to show impermissible motive or intent. *Id*. Employees lose if the company honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish or trivial or even baseless. *Hartley v. WI Bell Inc.*, 124 F.3d 887 (7th Cir. 1997).

*Title VII*

Title VII prohibits an employer from discriminating on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of sex discrimination under the indirect method of proof, Plaintiff must show: (1) she was a member of a protected class; (2) she was meeting her employer's legitimate performance expectations; (3) she was subject to an adverse employment action; and (4) she was treated less favorably than similarly situated male employees. *Rhodes v. Illinois Dep't of Transp.,* 359 F.3d 498, 504 (7th Cir.2004); *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 680 (7th Cir.2002).

In cases such this one, where a plaintiff claims that she was subject to disparate punishment, the second and fourth prongs of *McDonnell Douglas* merge. *See Lucas v. Chicago Transit Authority,* 367 F.3d 714, 728 (7th Cir. 2004)(citing *Grayson v. O'Neill,* 308 F.3d 808, 817 (7th Cir.2002); *Flores v. Preferred Technical Group,* 182 F.3d 512, 515 (7th Cir.1999)). Given that there is no question that the employee failed to meet his employer's expectations in such situations, the plaintiff must establish that he received dissimilar–and more harsh–punishment

than that received by a similarly situated employee who was outside the protected class. *See id.* (citing *Grayson,* 308 F.3d at 817; *Flores,* 182 F.3d at 515).

Plaintiff must show that similarly situated employees dealt with the same supervisor, were subject to the same standards, and engaged in similar conduct without differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them. *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 617-18 (7th Cir.2000). To meet her burden of identifying a similarly situated employee, Plaintiff must identify a male co-worker who is directly comparable to her in "all material respects."

Plaintiff fails to establish a prima facie case of discrimination because she has not identified any similarly situated male employees who were directly comparable to her in all material respects–e.g., performance, qualifications, and conduct–and yet were not disciplined in the same manner. *See Peters v. Renaissance Hotel Operating Co.,* 307 F.3d 535, 546 (7th Cir.2002); *Radue,* 219 F.3d at 617-18; *Grayson,* 308 F.3d at 819. Courts have also considered employees' previous job performance problems in determining whether employees are similarly situated. *See Radue,* 219 F.3d at 618-19.

Plaintiff offers two examples of men who are similarly situated to her: William Peterson and Erik Byers.[5] Both Peterson and Byers reported to Perry, just like Plaintiff did. All three were subject to the same policies and procedures. All three worked in RAG's sales staff.

---

[5] Plaintiff claims that this Court should view her firing as a "mini-RIF" (reduction-in-force) so that she need not show that similarly situated employees were treated better than she was. *See, e.g., Bellaver v. Quanex Corp.*, 200 F.3d 485 (7th Cir. 2000). The mini-RIF precedents do not apply here, however, because the Defendant argues that it fired Plaintiff solely on the basis of her disciplinary problems rather than as

While all three may have violated the company's signature policies–albeit in different ways–all three have very different disciplinary histories. Even when the facts are construed in the light most favorable to Plaintiff, her disciplinary history is far more problematic than that of either Peterson or Byers. Not only did she violate the signature policy, prior to that she received a pre-discharge disciplinary warning and a customer filed a written complaint against her. Neither Peterson nor Byers had any documented discipline issues.

Plaintiff offers two reasons for why the difference in disciplinary history should not matter. First, she claims that she should not have received a pre-discharge warning for the fact that she did not return unpaid-for furniture she had taken from the company. Had she not received that warning, Plaintiff contends, she would have had a history that was the same as that of Patterson and Byers. Second, she argues that Byers should have had the same history as her. She claims that he was guilty of the same act of possessing furniture without payment and that he should have been disciplined for his usage of the internet and telephone. Had he been punished for those previous infractions, Plaintiff contends, he would have had a disciplinary history similar to hers, even though she had been issued a pre-discharge warning letter.

Plaintiff's argument that she should not have been disciplined for possessing furniture without payment is without merit. The fact that a prior supervisor had given her permission to take various pieces of furniture home without any payment is hardly enough to overcome the fact that she chose not to return that furniture when a current supervisor announced that the company would be enforcing its policy forbidding precisely such "loans" and ordered employees to return the furniture they had taken. Plaintiff does not dispute that she was well aware of the change in policy and choose to ignore it because she felt that permission from a prior supervisor was

sufficient to override a shift in policy and explicit statements from her current supervisor about an amnesty period. Plaintiff's argument that she "did not need to participate in the amnesty program" is, in short, unconvincing. Neither side disputes that Plaintiff was aware of the amnesty program, independently determined that she was not required to participate, and was later disciplined for the possession of furniture without payment. Her actions were severe enough, according to her employer, that she merited a pre-discharge warning letter. Her argument before this Court that her actions were not problematic–and that she was in the right by ignoring company policy and the amnesty program–is uncompelling.

Plaintiff further confuses the issue by arguing that Byers also in possession of furniture without paying for it and so should have been disciplined. She omits the fact, however, that Byers participated in the amnesty program. Plaintiff suggests that the timing of the return should not matter; this Court disagrees. Plaintiff also argues that she was similarly situated to Byers, despite the fact that she had received a pre-discharge warning letter and he had not, because he should have been disciplined for his phone and internet usage. The employer, rather than this Court, is best suited to determine whether Byers should have been disciplined and whether his alleged infraction was as serious as that of possessing furniture without payment.

Plaintiff also argues that Defendant failed to punish Byers and Peterson in any way for their misconduct. It is important to note that Byers and Peterson were not similarly situated to Plaintiff: their punishment, consequently, need not be the same as hers. Plaintiff does not dispute that both Byers and Peterson were orally reprimanded for failing to follow the signature policy.[6]

---

[6]She also does not dispute the fact that Defendant drafted disciplinary letters for Byers and Peterson. Nor does she dispute that Byers and Peterson quit within two weeks of her termination, before they received the letters

Of the three individuals charged with the wrongdoing, Plaintiff was the only one with a severe disciplinary history. Byers and Peterson, Plaintiff acknowledges, were more willing to please Perry. Defendant had a progressive disciplinary scheme. It is not unreasonable to assume that an employer would choose to discipline a problematic employee less severely than it disciplines an employee with no documented disciplinary problems. The difference in discipline does not support a prima facie case of discrimination.

Moreover, even had Plaintiff managed to present a prima facie case, she could not prevail because she does not show that Defendant's reasons for her firing–her disciplinary history involving the possession of company furniture, the customer complaint, and her final transgression of forging customer signatures–are pretextual. In order to defeat Defendant's motion for summary judgment, Plaintiff point to specific facts that sufficiently cast doubt on Defendant's proffered reasons for her termination. *See Schuster v. Lucent Tech., Inc.,* 327 F.3d 569, 578 (7th Cir. 2003). This Court must review "whether the employer gave an honest explanation of its behavior." If Defendant honestly believed the nondiscriminatory reasons it offered, Plaintiff cannot prevail. *See Jackson v. E.J. Brach Corp.,* 176 F.3d 971, 984 (7th Cir. 1999). Furthermore, Plaintiff must present facts "to rebut each and every legitimate, non-discriminatory reason advanced by the [defendant] in order to survive summary judgment." *Clay v. Holy Cross Hosp.,* 253 F.3d 1000, 1007 (7th Cir. 2001).

Plaintiff fails to provide evidence indicating that Defendant did not honestly believe that it terminated her because of her disciplinary history. She does not dispute that she was disciplined. She may disagree as to the appropriateness of the discipline she received, but she

does not rebut that she was disciplined and that her discipline was based on her actions failing to return furniture and forging signatures.

Plaintiff fails to provide evidence of any impermissible motive or intent behind Defendant's actions in firing her. Plaintiff claims that the legitimate, non-discriminatory reason–her disciplinary history–is rebutted by the evidence she offers. Some of Plaintiff's evidence, even when construed in a light most favorable to her, is insubstantial. It is important to keep in mind that Plaintiff had a history of disciplinary problems that set her apart from other employees. Though odd if true, the fact that Perry gave Peterson and Byers Starbucks gift cards valued at ten dollars each and did not give Plaintiff and other women a card for completing the same task does not support a conclusion that Plaintiff's firing was a pretext. Similarly, the fact that she was not granted her vacation request as quickly as other employees–regardless of age or gender–does not show that she was the subject of discrimination.

The other pieces of evidence that Plaintiff provides are no more convincing. The fact that she believes the human resources department did not adequately respond to what she now claims were charges of discrimination is also not enough to rebut Defendant's legitimate, non-discriminatory reason. The letter documenting her complaints indicates that the entire office is in disarray and that all employees–regardless of age or gender–are being mistreated. While Klaristenfeld may have disagreed with the way that Perry disciplined employees after the signature violations, that disagreement is not sufficient to show that Perry discriminated when meting out discipline. Similarly, Plaintiff's claim that Byers should have been disciplined for other policy infractions is not enough to rebut Defendant's claim that Plaintiff was fired for her disciplinary problems.

*ADEA*

The Age Discrimination in Employment Act ("ADEA") prohibits an employer from, among other preclusions, discharging an employee over 40 years old because of that individual's age. 29 U.S.C. §§ 623(a), 631(a). The Supreme Court has not held the burden-shifting method applies in the ADEA context, but it "makes sense" to use the analysis in a typical ADEA case. *Hartley v. WI Bell Inc.*, 124 F.3d 887, 889 (7th Cir. 1997) (citing *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308 (1996)). Under the burden-shifting approach, to establish a prima facie case of age discrimination under ADEA, the plaintiff must show that: (1) she was in a protected age group of persons 40 or older; (2) she was performing her job satisfactorily; (3) she was discharged; and (4) substantially younger employees were treated more favorably. *See Cianci v. Pettibone Corp.*, 152 F.3d 723, 728 (7th Cir. 1999); *Hartley*, 124 F.3d at 892.

With respect to the last prong, an inference of age discrimination cannot be drawn from the replacement of one worker with another worker insignificantly younger. *O'Connor*, 517 U.S. at 313. The younger employees "need not be outside the protected class, i.e. under the age of forty," but they should be substantially –i.e. at least ten years – younger than the terminated employee." *Hoffman v. PRIMEDIA Special Interest Publications*, 217 F.3d 522, 524 (7th Cir. 2000) (*citing Miller v. Borden, Inc.*, 168 F.3d 308, 313 (7th Cir. 1999)). There may be situations, however, where a difference of less than ten years is substantial. *Hartley*, 124 F.3d at 893. In such cases "where the disparity is less, the plaintiff still may present a triable claim if she directs the court to evidence that her employer considered her age to be significant." *Id*.

The employees that Plaintiff proposes are substantially younger than her are William Peterson and Eric Byers. Peterson is approximately five years younger than Plaintiff; Byers is

approximately six years younger than Plaintiff. Neither is presumptively substantially younger than Plaintiff.

Consequently, Plaintiff must direct this Court to evidence that Defendant considered her age to be significant. She does not do so and so her ADEA claim fails.

Moreover, even had Plaintiff managed to present a prima facie case, she could not prevail on her ADEA claim because she does not show that Defendant's reasons for her firing–her disciplinary history, customer complaint, and final transgression–are pretextual. As noted earlier, Plaintiff fails to provide any impermissible motive or intent behind Defendant's actions in firing her.

*Retaliation*

Plaintiff also brings a retaliation claim pursuant to both Title VII and the ADEA. "[U]nlawful retaliation occurs when an employer takes an adverse employment action against an employee for opposing impermissible discrimination." *See Rogers v. City of Chicago,* 320 F.3d 748, 753 (7th Cir.2003). The adverse employment action Plaintiff identifies is Defendant's decision to terminate her employment roughly four months after she wrote a letter complaining about Perry's management style and one month after she admits to violating the customer signature policy.

Plaintiff may establish a prima facie case of retaliation and overcome defendant's motion for summary judgment using either the direct method or the indirect method. Under the direct method, she must present direct evidence of (1) a statutorily protected activity; (2) an adverse employment action taken by the employer; and (3) a causal connection between the two. Under the indirect method, the plaintiff must show that (1) she engaged in a statutorily protected

activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse action from the employer; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *See Williams v. Waste Management of Illinois*, 361 F.3d 1021, 1031 (7th Cir. 2004)(citations omitted).

With either approach, however, Plaintiff must show that she engaged in statutorily protected activity. "It is axiomatic that a plaintiff engage in statutorily protected activity before an employer can retaliate against her for engaging in statutorily protected activity...An employer cannot retaliate if there is nothing for it to retaliate against." *Durkin v. Chicago,* 341 F.3d 606, 614 -615 (7th Cir. 2003).

Plaintiff claims that she engaged in statutorily protected activity when she sent a letter to Giebutowski, complaining about the work environment. The letter makes clear that Plaintiff felt that Perry had negative feelings about the all the furniture staff, regardless of gender or age. For example, one complaint was that Perry told neither Plaintiff nor Byers that she was leaving the showroom. Another listed complaint was that Plaintiff's ten-year anniversary was not celebrated while every other employee's anniversary was celebrated. Plaintiff paints a picture of a supervisor who she believes was not managing the staff well and did not understand the needs of the business. There was no indication in Plaintiff's letter that she believed that considerations of gender or age played a factor in Perry's perceived shortcomings; consequently, Plaintiff's submission of the letter is not statutorily protected activity. *See, e.g., Tomanovich v. City of Indianapolis and Indiana Dep't of Transp.*, No. 05-1653, slip.op. at 4 (7th Cir. August 8, 2006) (finding that grievance did not constitute protected activity when employee "fails to point to any

evidence that in complaining to the City he indicated the alleged harassment was based upon his sex or was sexual harassment."). *See also Gleason v. Mesirow Fin., Inc,.* 118 F.3d 1134, 1147 (7th Cir. 1997) (employee who did complained in general terms about management style but did not raise the subject of sexual harassment to anyone in authority and neglected to follow reporting procedures did not engage in statutorily protected activity); *Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 727 -728 (7th Cir. 2003) ("Although an employee need not use the magic words 'sex' or 'gender discrimination' to bring her speech within Title VII's retaliation protections, 'she has to at least say something to indicate her [gender] is an issue. An employee can honestly believe she is the object of discrimination, but if she never mentions it, a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints.'") (citations omitted).

Plaintiff makes much of the fact that the letter states that "Bill [Patterson] and Erik [Byers] received Starbucks cards" while "Chiara and I did not receive these same cards although they were promised to us all." That statement, in light of the slew of complaints listed in the letter, is not sufficient to suggest that Plaintiff was opposing impermissible discrimination by writing her letter. Given that Plaintiff has not provided evidence that would support a conclusion that she engaged in a statutorily protected activity, she cannot avoid summary judgment.

## Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. This case is CLOSED. All pending motions are MOOT and TERMINATED.

Enter:

 /s/ David H. Coar        
David H. Coar
United States District Judge

Dated: **September 1, 2006**